IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JUDY CAROL BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:10-cv-369-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq.*, Judy Carol Baker ("Baker") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Baker requests judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with

instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir.

2003). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). The Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]," but rather "we must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The district court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs*, 21 F.3d 1064, 1066 (11th Cir. 1994). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

 (1) Is the person presently unemployed?

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

  (2) Is the person's impairment(s) severe?

  (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

  (4) Is the person unable to perform his or her former occupation?

  (5) Is the person unable to perform any other work within the economy?

  An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

  The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

  To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Baker, age 47 at the time of the hearing, has a high school equivalent education.  (Tr. 104). Baker performed past relevant work as a security guard (light, semi-skilled).  (Tr. 35, 101).  Baker has not engaged in substantial gainful work activity since her alleged disability onset date of March 2, 2006. (Tr. 11).  Baker claims she is unable to work due to myalgia, fibromyalgia, pain in her ankles, back and hip, Graves disease and status post removal of thyroid with post treatment, major depressive disorder and migraine headaches.  (Tr. 15).

Medical records show Baker went to Tallassee Family Care in August 2005.  She complained that she began to experience increasing muscular pain from the back of her neck down to her knees. (Tr. 146).  The doctor diagnosed Baker with myalgia, suspicious for fibromyalgia, hypothyroidism, and fatigue.  *Id.*

In June 2006, Willis Crawford, M.D., examined Baker at the request of the State agency.  (Tr. 207-10).  Baker complained of pain in the lower back, elbows, above the

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

ankles, knees, and the low back of the head. (Tr. 207). Baker reported she was doing well except for the pain. *Id.* Her medications included Tramadol, Unithroid, and Zoloft. (Tr. 208). Baker's physical exam was essentially normal. (Tr. 208-10). Dr. Crawford noted a history of hyperthyroidism - post treatment, fibromyalga, and tobacco abuse. (Tr. 210). Dr. Crawford concluded Baker could sit, stand, walk, lift/carry/handle objects, hear, speak, and travel. *Id.*

Also in June 2006, Baker underwent a consultative psychological examination performed by Michele King, Ph.D. (Tr. 213-17). Baker reported that she had been diagnosed with fibromyalia and that she had concentration and memory problems. (Tr. 213). Dr. King diagnosed Baker with "major depressive disorder, single episode, moderate." (Tr. 217). She concluded that Baker could understand/carry out/remember simple to complex instructions, respond appropriately to supervisors and co-workers, and would do best in a supportive work environment. (Tr. 217).

Susan Kotler, Ph.D., a State agency psychologist, reviewed the medical records and completed a psychiatric review technique form (PRTF) in July 2006. (Tr. 218-31). Dr. Kotler found that Baker had "moderate" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 228). Dr. Kotler also completed an assessment on Baker's mental functional capacity, concluding that she had no significant limitations in understanding and memory and that she could maintain attention and concentration for two hour periods and complete a regular workday at an acceptable

pace. (Tr. 232). She also concluded that Baker could interact appropriately in brief, casual encounters with the public and co-workers, respond appropriately to simple-explained/constructive/supportive/non-confrontational feed back; and respond to simple and infrequent changes in work routine. (Tr. 234). Calvin Johns, M.D.[5], reviewed the medical record and testified as a medical expert at the September 2008 hearing (Tr. 30-34). Dr. Johns testified that Baker had been diagnosed with myalgia, rule out fibromyalgia, hypothyroidism, tobacco and alcohol problems, whiplash from a motor vehicle accident, major depressive and affective disorder, and post-menopausal migraines. (Tr. 31). He noted that Baker lacks a definitive diagnosis of fibromyalgia. (Tr. 32).

A vocational expert (VE) also testified at the hearing. The ALJ asked the VE to consider a hypothetical individual who had the residual functional capacity to perform light work with all of the moderate limitations on mental activities specified in Exhibit 6F (Dr. Kotler's mental functional capacity assessment at Tr. 232-35). (Tr. 35-36). The ALJ asked whether the hypothetical individual could preform Baker's past relevant work as a security guard and the VE responded in the affirmative. (Tr. 36). The ALJ also asked the VE to consider a hypothetical individual who had moderately severe levels of pain and suffered from depression causing fatigue that affects the ability to concentrate for periods of up to two hours. *Id.* The VE's response to the hypothetical was that it "would preclude her past relevant work and any[] type of work if it's up [] to that two-hour or more [period]." *Id.*

Finally, Baker testified that she quit her job as a security guard in 2000 when her

---

[5] *See* Tr. 79-80 (Dr. John's resume).

mother, who had been her son's babysitter, passed away. (Tr. 22). At the time of the hearing, Baker stated she could not go back to work because her son could not drive and she had to take him back and forth to school and work. (Tr. 24).

## V. Issues

Baker raises one issue for judicial review which is whether the ALJ erred as a matter of law in failing to find Baker's fibromyalgia to be a severe impairment which can form the basis of a disability claim, even in the absence of objective findings.

## VI. Discussion

Baker argues that the ALJ failed to find her fibromyalgia to be a severe impairment and argues that the ALJ failed to properly consider the impact of this impairment on her ability to work. *See* Doc. 10 at p. 8. Here, the ALJ correctly followed his procedures. The only place the ALJ is to determine if a impairment is severe is in step two of his five step process. Step two is only "a threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "It allows only claims based on the most trivial impairments to be rejected." *Id.* In this case, the ALJ did find that Baker had several severe impairments, those being myalgia, with pain in her ankles/back/hip, Grave's disease, major depressive disorder and post menopausal migraine headaches. Hence, the ALJ did not deny Baker's claim at stage two of his analysis.

If Baker is correct in her contention that the ALJ should have classified her fibromyalgia as severe, her argument still fails as this would be harmless error. In *Newsome ex rel. Bell v. Barnhart*, the court found "that-to the extent that the ALJ erred in failing to

make an explicit determination as to whether plaintiff's secondary diagnosis [] constituted a severe impairment at step two of the sequential evaluation-the error was harmless." 444 F. Supp. 2d 1195, 1201 (M.D. Ala. 2006). So if there was an error on the ALJ part in failing to find that the fibromyalgia was severe, the error was harmless because he did not deny Baker for a failure to clear step two of his evaluation process.

Baker also alleges that the ALJ failed to properly consider the impact of her fibromyalgia on her ability to work. Here, the ALJ had substantial evidence to reach the conclusion that Baker has the residual functional capacity to perform a reduced range of light work. An ALJ may reject a claimant's subjective testimony if he does not find it credible, but "he must articulate explicit and adequate reasons for doing so." *Mason v. Comm'r of Soc. Sec.*, 2011 WL 2419929, *4 (11th Cir. 2011) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Brown v. Comm'r or Soc. Sec.*, 2011 WL 1643539, *4 (11th Cir. 2011) (same). This Court can only disturb the ALJ's finding of credibility if there is not substantial evidence in the record to support his decision. *Foote,* 67 F.3d at 1562; *MacGregor v. Bowen*, 786 F. 2d 1050, 1054 (11th Cir. 1986). In the present case, the ALJ stated he considered "all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 14). The ALJ also noted that Baker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity

assessment." (Tr. 15).

In considering Baker's credibility, the ALJ discussed the care Baker received from her primary physician, the subsequent lack of treatment from 2006 to at least 2008 the date of the hearing, the effectiveness of her medication, and her testimony at the hearing. The Eleventh Circuit has found that "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F. 2d 55, 59 (5th Cir. 1987)). The ALJ may consider in deciding a claimant's credibility the level or frequency of treatment received. SRR 96-7p at 7. However, the ALJ cannot draw an adverse inference from the lack of medical treatment without considering the claimant's explanation for the failure to seek treatment. *Id.* The Eleventh Circuit has held that "the ALJ must consider whether the claimant is able to afford the medical care." *Brown*, 2011 WL 1643539, at 4; *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). If the ALJ does not place great emphasis on the lack of subsequent medical treatment, then the ALJ's failure to consider the inability to pay for medical treatment is non-reversible error. *Id.* Baker has only received conservative treatments from her doctor; no further examinations have been conducted; and no pain managing modalities have been instituted by her physicians. (Tr. 15-16). At the hearing, Baker testified that her medication did lessen her pain symptoms, but that she had not sought recent medical treatment because it is too expensive and she lacks insurance. (Tr. 27). She also testified that she quit her job because her mother passed away and she needed to care for her minor son and mentally retarded aunt. (Tr. 22-24); *see Potter v. Sec'y of*

*Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (a claimant's admission that she did not leave employment as a result of a health-related impairment is relevant to a determination of disability). She further testified that she still drives her son to and from work and school daily. (Tr. 24).

The ALJ gave great weight to the opinions of Dr. Crawford, Dr. King, and Dr. Kotler - none of whom concluded that Baker is permanently disabled. *See Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) (fact that no physician stated that claimant was disabled supported ALJ's decision). Dr. Crawford found that Baker could sit, stand, walk, lift/carry/handle objects, hear, speak, and travel. (Tr. 210). Dr. King found that Baker could understand, carry out and remember simple to complex instructions, should have no difficult responding appropriable to supervisors and coworkers, but would do best in a supportive work environment. (Tr. 217). Dr. Kotler stated that Baker's affective disorder resulted in moderate limitation in activities of daily living; moderate limitation in maintaining social functioning; moderate limitation in maintaining concentration, persistence or pace or episodes of decompensation. (Tr. 228). Dr. Kotler determined that Baker had no significant limitations in understanding and memory; could maintain attention and concentration for 2-hour periods, complete a regular work day at an acceptable pace, interact appropriately to simply-explained/constructive/supportive/non-confrontational feedback, and respond to simple and infrequent changes in work routine. (Tr. 232-235).

The ALJ "will assess and make a finding about [Baker's] residual functional capacity based on all the relevant medical and other evidence in [] record." 20 CFR §404.1520 (e).

The ALJ considered all the subjective and objective evidence and his decision is supported by substantial evidence, therefor this court will not reverse his decision.

### VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 22nd day of July, 2011.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES MAGISTRATE JUDGE